IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RORY MARSICO, | ) ELECTRONICALLY FILED |
| Plaintiff, | ) Case No. |
| v. | ) |
| VIEGA, LLC, | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## COMPLAINT IN CIVIL ACTION

Rory Marsico, by and through the undersigned counsel, files this Complaint in Civil Action (hereinafter, the "Complaint") against Viega, LLC, averring as follows:

## PARTIES

1. Rory Marsico ("Plaintiff") is a 43-year-old male who resides in Pittsburgh, Pennsylvania 15238.

2. Viega, LLC ("Defendant") is a foreign limited liability company formed in the State of Delaware and utilizes as its registered agent CT Corporation System located at 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101. Plaintiff worked remotely for Defendant at his residence in Pittsburgh, Pennsylvania 15238, and also traveled for sales work for Defendant in the Pittsburgh metro area.

## JURISDICTION AND VENUE

A. **This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (the "Federal Question Jurisdiction") as Plaintiff is advancing claims under the Americans with

Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq*. (the "ADA") and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA") (the "Federal Law Claims").

4. Plaintiff is also advancing claims under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, *et seq.* (the "PHRA") (the "State Law Claims").

5. This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.

6. Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B. The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

7. Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.

8. Specifically, these events and omissions occurred within Allegheny County, Pennsylvania which is one of the counties encompassed by the Western District.

9. This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania and conduct arising

within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to LCvR 3.

**C.   This Court May Exercise Personal Jurisdiction Over Defendant.**

10. This Court may exercise personal jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5301(a)(2).

11. This Court also has general jurisdiction over Defendant in accordance with the Due Process Clause of the United States Constitution.

12. 42 Pa. C.S. § 5301(a) provides for jurisdiction over individuals and entities, stating:

> The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person:
> (2) Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. C.S. § 5301(a).

13. As set forth above, Defendant has registered itself as foreign limited liability company in the Commonwealth of Pennsylvania and accordingly subjected itself to the general jurisdiction of Pennsylvania's tribunals; further, Defendant conduct business operations within Pennsylvania. Accordingly, Defendants may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2).

**D.   Plaintiff has Exhausted his Administrative Remedies and the Federal Law Claims and the State Law Claims are now Properly Able to be Brought Before This Court.**

14. Plaintiff has satisfied all procedural and administrative prerequisites under 29 U.S.C. § 626, 42 U.S.C. § 2000e-5, and 43 P.S. § 959 and now may proceed to bring this action before the Court. Specifically:

(a) On or about January 28, 2025 Plaintiff dual filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for the Federal Law Claims and the State Law Claims at charge number 533-2025-01033 (the "EEOC Charge") and with the Pennsylvania Human Relations Commission (the "PHRC").

(b) On June 25, 2025, the EEOC issued the Determination and Notice of Rights (the "DNR"), wherein Plaintiff was afforded ninety days within which to timely file the Federal Law Claims and the State Law Claims. A true and correct copy of the DNR is attached hereto, made a part hereof, and identified as **Exhibit A**.

15. The instant Complaint is filed within the ninety-day time period.

## FACTUAL BACKGROUND

16. Plaintiff commenced employment with Defendant in 2017 as a National Accounts Manager.

17. Plaintiff was a full-time employee, consistently working at least 40 hours per week, and was paid a salary of $110,000 per annum, plus an annual bonus, the latest of which was approximately $65,000. Accordingly, his yearly income totaled approximately $175,000.

18. In a typical week, Plaintiff's position involved remote work on Mondays and Fridays as well as travel for sales from Tuesday through Thursday.

19. Plaintiff has bipolar disorder (the "Disability").

20. At all times relevant hereto, Defendant was fully aware of Plaintiff's Disability.

21. In or about January 2024, Plaintiff invoked his right to FMLA leave to seek treatment for his Disability, wherein he would attend an outpatient program and undergo testing in order to receive a medication commonly known as "Spravato."

4

22. Twelve weeks later, upon the expiration of his FMLA leave, Plaintiff spoke with Human Resources ("HR") representative, Steve Kondracki ("Kondracki"), regarding his return to work and requested accommodation for his Disability.

23. Specifically, Plaintiff requested Defendant to allow him to obtain the Spravato treatment twice per week for four weeks, then once per week for four weeks thereafter, as advised by his medical team.

24. Plaintiff informed Kondracki that when he received the Spravato treatment, he must be monitored for three to four hours but was able to work remotely afterwards with no cognitive impairment.

25. Plaintiff further offered to obtain these treatments on Mondays and Fridays, which were his typical remote workdays.

26. However, Kondracki refused to make any such accommodation and stated that it would classify Plaintiff as a "part-time" employee.

27. Consequently, Kondracki advised that Plaintiff invoke short-term disability leave for the remainder of his treatment.

28. Throughout April and May 2024, Plaintiff underwent additional testing for the Spravato treatment and attended an intensive outpatient therapy treatment. Throughout this time, Plaintiff continually requested to return to work with reasonable accommodation, which requests were continually ignored or denied by Defendant.

29. On June 21, 2024, Plaintiff was notified by his direct supervisor, David Weir ("Weir"), that his position had been backfilled; however, Weir assured Plaintiff that his position would be available to him upon his return from short-term disability leave.

30. Plaintiff further notified Weir of his continued requests to return to work with reasonable accommodation that had gone largely unanswered or denied. Weir disregarded Plaintiff's concern and simply stated that Plaintiff must "work this out with HR."

31. On June 26, 2024, Kondracki called Plaintiff, at which time Plaintiff updated Kondracki on the status of his Spravato treatment and notified him that the 8-week treatment was set to officially begin the following day.

32. Kondracki advised Plaintiff to now file for long-term disability leave, while he assured Plaintiff that he would be able to return to his position and was "doing everything right."

33. On July 16, 2024, Plaintiff's long-term disability leave began.

34. On July 22, 2024, Plaintiff received another phone call from Kondracki. Kondracki informed Plaintiff that his position with Defendant was being terminated as of August 1, 2024.

35. Plaintiff was bewildered and upset by this new information, as he was assured repeatedly that he would be able to return to his position upon completion of his medical treatment for the Disability. When Plaintiff expressed this to Kondracki, he stated that Plaintiff could apply for other positions within the company.

36. In the fall of 2024, Plaintiff applied for two positions with Defendant — both of which he was highly qualified for. While the hiring team at Defendant led Plaintiff to believe that he was being considered for the positions, he was later informed in both instances that Defendant was "going in a different direction."

## COUNT I
## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE ADA AND THE PHRA
## 42 U.S.C. § 12101, *et seq.*; 43 P.S. § 951, *et seq.*

37. Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

38. The ADA was enacted in 1990 in an effort to provide a national mandate designed to eliminate discrimination against qualified individuals living with disabilities. 42 U.S.C. § 12101. Accordingly, the ADA provides that no employer shall discriminate against an individual on the basis of their disability with regard to the terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a).

39. To establish a *prima facie* case of discrimination under the ADA, the employee must demonstrate: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation by the employer; and (3) he suffered an otherwise adverse employment decision as a result of discrimination. *See McGlone v. Philadelphia Gas Works*, 733 Fed. Appx. 606, 610 (3d Cir. 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

A. **Plaintiff Suffers from a Disability Pursuant to the ADA and PHRA.**

40. The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; **or** (C) being *regarded as* having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1)(A)-(C) (both emphases added). *See also, Hannis-Miskar v. N. Schuylkill Sch. Dist.*, No. 3:16cv142, 2016 U.S. Dist. LEXIS 96118, at *5 (M.D. Pa. Jul. 22, 2016) (quoting same).

41. A person has a disability pursuant to 42 U.S.C. § 12102(1)(A), if he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

42. Further, the PHRA defines a "disability" to include an "actual mental or physical impairment that substantially limits one or more major life activities." *Sowell v. Kelly Servs., Inc.*,

7

139 F. Supp. 3d 684, 704 (E.D. Pa. 2015) quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266,274 (3d Cir. 2012).[1]

43. Plaintiff possesses a "disability" pursuant to 42 U.S.C. § 12102(A) as he has bipolar disorder, which constitutes a mental and physical impairment that substantially limits Plaintiff in the pursuit of his major life activities, including working, caring for himself, and socializing.

**B.  Plaintiff is a Qualified Individual Pursuant to 42 U.S.C. § 12111 of the ADA and Was Qualified to Performed the Essential Functions of His Job With or Without Reasonable Accommodation.**

44. The ADA provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

45. At all times material, Plaintiff was qualified to perform the duties of a National Accounts Manager, as indicated by Plaintiff's sufficient skills in the areas of comprehension, communication, interpretation, and analysis needed to interface with Defendant's clients, effectuate sales, solicit new customers, and manage projects and accounts, among other tasks.

46. Plaintiff successfully performed the functions of his job from the time his employment commenced in 2017 up to the time of his termination.

47. Plaintiff was, therefore, qualified to perform the essential functions of his position with or without reasonable accommodation.

---

[1] The Pennsylvania legislature has not revised the PHRA to address that Congress substantially broadened the definition of a "disability" to the "maximum extent permitted by the terms" of the ADA. *Ostrowski v. Con-way Freight, Inc.*, 543 F. App'x 128, 131 (3d Cir. 2013). These amendments became effective on January 1, 2009 and as such, the PHRA's definition of a "disability" differs from that provided by the ADA. *See McDonald v. Pa. State Police*, 532 F. App'x 176, 177 (3d Cir. 2013); *Sowell*, 139 F. Supp. 3d 684 at 704 (E.D. Pa. 2015). In all other respects, the ADA and the PHRA are interpreted consistently and utilize the same standards for determining liability. *Oden v. Se. Pa. Transp. Auth.*, 671 F. App'x 859, 863 (3d Cir. 2016) (citing *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012)).

**C.     Plaintiff Suffered Adverse Employment Action as a Result of Discrimination.**

48.     As stated hereinabove, Plaintiff explained to Defendant, through discussions with Kondracki, his medical team advised that he receive the Spravato treatment for his Disability.

49.     Defendant denied Plaintiff's requested accommodation, i.e., a modified scheduled to receive treatments, and forced him to take short-term disability leave followed by long-term disability leave.

50.     Within one week of Plaintiff filing for long-term disability leave, as Kondracki had instructed him to do, Defendant terminated Plaintiff's employment.

51.     In demanding Plaintiff take disability leave and subsequently terminating his employment, Defendant took adverse action against Plaintiff which was motivated by the fact that he possesses the Disability.

52.     Plaintiff has, therefore, satisfied a *prima facie* case of discrimination pursuant to the ADA and the PHRA.

**D.     Plaintiff is Entitled to Pursue Punitive Damages as Defendant Discriminated Against Him With Malice and Reckless Indifference to His Federally Protected Rights.**

53.     An aggrieved employee may recover punitive damages where he can demonstrate the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Godwin v. George Washington, LP*, No. 22-1066, 2022 BL 467663, at *3 (W.D. Pa. Dec. 30, 2022) (citing 42 U.S.C. § 1981(a)(b)(1)).

54.     The terms "malice" and "reckless indifference" pertain specifically to the employer's knowledge that it acted in violation of federal law rather than an awareness of engaging in "discrimination." *Godwin*, 2022 BL 467663, at *3 (citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999)).

9

55. At all times material, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination in accordance with the ADA's statutory protections.

56. In forcing Plaintiff to take leave and terminating him, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights, and Defendant's actions warrant Plaintiff's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1). *See Godwin*, 2022 U.S. Dist. LEXIS 234023, at *6-7, *infra*.

57. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

58. WHEREFORE, Plaintiff, Rory Marsico, seeks judgment against Defendant for willful noncompliance of the ADA and PHRA and seeks compensatory damages in the form of front pay and back pay, punitive damages as this Honorable Court deems appropriate, reasonable attorney's fees, costs, expenses, and other such relief as this Court deems just, equitable, and proper.

<u>**COUNT II**</u>
**FAILURE TO ACCOMMODATE
IN VIOLATION OF THE ADA AND THE PHRA
42 U.S.C. § 12101, *et seq*.; 43 P.S. § 951, *et seq*.**

59. Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

60. "To establish a *prima facie* case of failure to accommodate under the ADA and PHRA, a plaintiff must allege that (1) he was disabled and his employer knew it; (2) he requested an accommodation; (3) his employer did not make a good faith effort to assist; and (4) he could

have been reasonably accommodated." *Drizos v. PNC Invs. LLC*, Civil Action No. 19-1651, 2022 U.S. Dist. LEXIS 60719, at *13 (W.D. Pa. Mar. 31, 2022) (citing *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017)).

**A.    Plaintiff is Disabled and Defendant Had Knowledge of His Disability.**

61.    As averred above, Plaintiff possesses the Disability, of which Defendant was fully aware.

**B.    Plaintiff Requested Accommodation for His Disability.**

62.    In or around March 2024, Plaintiff requested accommodation in the form of a modified schedule that would allow him to receive the Spravato treatment for the Disability.

63.    Specifically, Plaintiff asked Defendant to permit him to obtain treatment twice per week for four weeks, followed by once per week for four weeks.

**C.    Defendant Failed to Make a Good Faith Effort to Accommodate Plaintiff's Disability.**

64.    Defendant, through Kondracki, flatly denied Plaintiff accommodation by refusing to alter his schedule, claiming that doing so would classify Plaintiff as a "part-time" employee.

65.    From April to May 2024, Plaintiff made numerous requests for accommodation, which Defendant consistently denied or ignored.

**D.    Plaintiff Could Have Been Reasonably Accommodated by Defendant.**

66.    Under the proposed 8-week Spravato treatment schedule, only 12 of Plaintiff's workdays would have been impacted.

67.    Additionally, Plaintiff proposed to Defendant that he could obtain treatment for the Disability on Mondays and Fridays — the days which he worked remotely — so that there would be minimal interruption of his schedule.

11

68. Complaint advised Defendant that each Spravato treatment session would last no more than three to four hours, and he would be fully capable of completing his work before and after those sessions on his treatment days.

69. As such, Plaintiff was willing and able to receive treatment for his Disability on a schedule that would have the least impact on his work and Defendant's enterprise.

70. Defendant therefore could have reasonably accommodated Plaintiff.

71. In denying Plaintiff reasonable accommodation, Defendant discriminated against Plaintiff in violation of the ADA.

72. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

73. WHEREFORE, Plaintiff, Rory Marsico, seeks judgment against Defendant for willful noncompliance of the ADA and PHRA and seeks compensatory damages in the form of front pay and back pay, punitive damages as this Honorable Court deems appropriate, reasonable attorney's fees, costs, expenses, and other such relief as this Court deems just, equitable, and proper.

## COUNT III
### RETALIATION FOR REQUESTING ACCOMMODATION IN VIOLATION OF THE ADA AND THE PHRA
### 42 U.S.C. § 12101, *et seq.*; 43 P.S. § 951, *et seq.*

74. Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

75. The ADA prohibits employers from retaliating against employees. 42 U.S.C. §12203(a). Specifically, the ADA states that "no person shall discriminate against any individual

because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Id.*

76. To establish a claim for retaliation, the employee must show: "(1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

**A.  Plaintiff Engaged in a Protected Activity Pursuant to the ADA When He Requested Accommodation.**

77. Plaintiff engaged in conduct that readily rises to the level of "protected activity" sufficient to satisfy the ADA. It is well-recognized that requesting accommodation for a disability constitutes a "protected activity" pursuant to the ADA. *Orzech v. Muhlenberg Township*, No. 5:18-cv-03938, 2019 BL 453570, at *6 (E.D. Pa. Nov. 22, 2019) citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190 (3d Cir. 2003) and *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010).

78. As previously stated, Plaintiff requested accommodation when he asked Defendant to permit him to work on a modified schedule in order to receive the Spravato treatment for his Disability.

**B.  Plaintiff Suffered an Adverse Employment Action After Engaging in a Protected Activity.**

79. The Third Circuit had held that an "adverse employment action" is an action taken by an employer which is "serious and tangible enough to alter an employee's compensation, terms,

conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 765 (3d Cir. 2004).

80. Following Plaintiff's requests for accommodation, Defendant, through Kondracki, instructed Plaintiff to take short-term disability leave and then long-term disability leave, the latter of which began on July 16, 2024.

81. On July 22, 2024, less than one week after Plaintiff began his long-term disability leave, Defendant terminated Plaintiff's employment.

82. It is axiomatic that termination of employment constitutes an "adverse employment action." *See Dreibelbis v. Cnty. Of Berks*, 438 F. Supp. 3d 304, 315 (E.D. Pa. 2020).

83. Thus, Defendant subjected Plaintiff to an adverse action following his protected activity.

C. **A Causal Connection Exists Between Plaintiff's Protected Activity and Defendant's Adverse Employment Action.**

84. The close temporal proximity between the time of Plaintiff's protected activity and Defendant's adverse employment action is sufficient to establish a causal connection, such that Defendant's actions were in violation of the ADA and the PHRA.

85. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

86. WHEREFORE, Plaintiff, Rory Marsico, seeks judgment against Defendant for willful noncompliance of the ADA and PHRA and seeks compensatory damages in the form of front pay and back pay, punitive damages as this Honorable Court deems appropriate, reasonable

attorney's fees, costs, expenses, and other such relief as this Court deems just, equitable, and proper.

**COUNT III**
**RETALIATION IN VIOLATION OF THE FMLA**
**29 U.S.C. § 2601,** *et seq.*

87. Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

88. The FMLA was passed in 1993 in an attempt to "balance the demands of the workplace with the needs of the families." 29 U.S.C. § 2601(b)(1). In an effort to ensure employees may avail themselves of the rights enshrined within the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or attempt to exercise these [FMLA] rights." 29 U.S.C. § 2615(a)(1). Further, the FMLA provides that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

89. These provisions have been interpreted, by the Department of Labor, to ensure that leave pursuant to the FMLA is not considered a "negative factor in employment actions such as hiring, promotions, or disciplinary actions." *See* 29 C.F.R. § 825.220(c). Further, these provisions are the catalyst for claims arising for "interference" and/or "retaliation" in connection with the exercise of an employee's FMLA rights. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009).

90. The Third Circuit has further held that "firing an employee for a valid quest for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Id.* at 509

91. To establish a claim of FMLA retaliation claim under 29 U.S.C. § 2615(a)(2), a plaintiff must show that: (1) they invoked their right to FMLA-qualifying leave, (2) they suffered

an adverse employment decision, and (3) the adverse action was causally related to their invocation of FMLA rights. *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014).

**A.    Plaintiff invoked his right to FMLA-qualifying leave.**

92.    Plaintiff invoked his FMLA rights in January 2024.

**B.    Plaintiff suffered adverse employment decisions.**

93.    Defendant terminated Plaintiff's employment on August 1, 2024.

**C.    Defendant's adverse actions were causally related to Plaintiff's invocation of his rights.**

94.    Ultimately, these adverse employment actions, individually and/or collectively, establish a sufficient causal nexus between Plaintiff's exercise of his statutory rights to FMLA leave and retaliatory discrimination on the part of Defendant because he had exercised those rights.

95.    Specifically, Plaintiff was not allowed to return to work after utilizing FMLA, his position was backfilled, and he was terminated for pretextual reasons.

96.    Defendant violated the rights afforded to Plaintiff under the FMLA and his right to not be retaliated against for invoking his FMLA rights.

97.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

**D.    Defendant is Liable for Liquidated Damages**

98.    The FMLA states:

> An additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the

> satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii) respectively

29 U.S.C. § 2617(a)(1)(A)(iii).

99. "The FMLA provides that any employer who violates the Act 'shall be liable' for 'an additional amount as liquidated damages' equal to the sum of the lost wages and benefits award and any interest on that award. 28 U.S.C. § 2617(a)(1)(A). A court may, in its discretion, exclude such liquidated damages only if the employer proves its FMLA violation 'was in good faith' and it "had reasonable grounds" for believing that it was not violating the FMLA. Id.

100. "To satisfy the subjective good faith requirement, the employer must establish an honest intention to ascertain and follow the dictates of the [statute]." *Diaz v. Saucon Valley Manor, Inc.*, No. 12-5033, 2013 U.S. Dist. LEXIS 122390, at *8 (E.D. Pa. Aug. 28, 2013), citing *Bowyer v. Dish Network*, No. 08-1496, 2010 U.S. Dist. LEXIS 14680, 2010 WL 629830, at 7 (W.D. Pa. Feb. 19, 2010).

101. Defendant's conduct in terminating Plaintiff's employment following his protected FMLA leave constitutes a willful violation of the FMLA. Specifically, Defendant was at all times aware that Plaintiff had a qualifying serious health condition—bipolar disorder—for which he sought and obtained FMLA leave beginning in or about January 2024.

102. After Plaintiff exhausted his 12 weeks of FMLA leave, he made multiple good-faith efforts to return to work with minimal, reasonable accommodations that would allow him to continue his medical treatment without disrupting his ability to perform his job duties, including offering to schedule his Spravato treatments on his normal remote workdays.

103. Defendant, through its HR representative Kondracki, not only rejected Plaintiff's proposed accommodations without engaging in any interactive process, but also mischaracterized the accommodations as converting Plaintiff to "part-time" status—an inaccurate and retaliatory assertion unsupported by any policy or necessity.

104. Thereafter, Plaintiff was funneled into short-term disability leave against his will and, despite repeated assurances that his job remained secure, was ultimately terminated just days after beginning long-term disability leave.

105. Defendant's actions were not the product of mistake, ambiguity, or isolated miscommunication. Rather, Defendant acted with clear and intentional disregard of Plaintiff's FMLA rights, having been fully apprised of Plaintiff's condition, leave status, and readiness to return with appropriate accommodations.

106. Despite repeated requests to return to work in a manner fully consistent with his role as a national accounts manager—a position Plaintiff held successfully since 2017—Defendant systematically denied those requests, backfilled his position, and ultimately terminated him without legitimate justification.

107. Defendant further demonstrated bad faith by falsely assuring Plaintiff that his position remained available, only to later revoke that assurance without explanation, and by subsequently rejecting Plaintiff's applications for other positions for which he was plainly qualified.

108. Defendant's internal communications and repeated reassurances—followed by an abrupt and baseless termination—underscore that Defendant knew or should have known that its actions violated Plaintiff's statutory rights.

109. Defendant's retaliatory conduct, culminating in Plaintiff's termination, constituted a willful violation of Plaintiff's rights under the FMLA. As a direct and proximate result, Plaintiff suffered economic harm.

110. Defendant is unable to meet its burden of establishing "good faith and reasonable grounds" for their violation of Plaintiff's rights. This is demonstrated by Defendant's willful animus in flagrantly disregarding its responsibilities and obligations as an employer.

111. WHEREFORE, Plaintiff, Rory Marsico, seeks judgment against Defendant for willful noncompliance of the FMLA and seeks compensatory damages in the form of front pay and back pay, liquidated damages equal to the sum of the lost wages and benefits award and any interest on that award, attorney's fees, costs, expenses, and other such relief as this Court deems just, equitable, and proper.

## JURY DEMAND

112. Plaintiff requests a trial by jury on all matters so triable.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: September 23, 2025                By: */s/ Patrick W. Carothers*
                                        Patrick W. Carothers (Pa. I.D. No. 85721)

                                        The Workers' Rights Law Group, LLP
                                        Foster Plaza 10
                                        680 Andersen Drive, Suite 230
                                        Pittsburgh, PA 15220
                                        Telephone: 412.910.7500
                                        Facsimile: 412.991.7510
                                        patrick@workersrightslawgroup.com

                                        *Counsel for Plaintiff, Rory Marsico*